UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

STACEY ROBINSON, as Administratrix of  )
the Estate of CHINA BRADLEY, deceased,  )
                                     )
          Plaintiff,  )
                                     )
     v.  )       Case No. 24-CV-0622-CVE-MTS
                                     )
TURN KEY HEALTH CLINICS, LLC,  )
VIC REGALADO, in his official capacity,  )
JUDY WAGGA, APRN, and  )
IRENE MURIUKI, LPN,  )
                                     )
          Defendants.  )

## OPINION AND ORDER

Before the Court are three motions to dismiss by defendants Turn Key Health Clinics, LLC (Dkt. # 31), Sheriff Vic Regalado (Dkt. # 32), and Judy Wagga, APRN (Dkt. # 29).  In December 2024, plaintiff Stacey Robinson filed this case on behalf of the Estate of China Bradley.  Dkt. # 2. Plaintiff's claims arise out of Bradley's care and treatment during the 317 days before her death on January 2, 2023.  During that time Bradley was held as a pretrial detainee in David L. Moss Criminal Justice Center (Tulsa County Jail), where Turn Key provided medical care and staffing, under contract with Tulsa County.  Bradley suffered from acute mental health disorders, which plaintiff states were improperly treated during the time spent in the Tulsa County Jail.  Specifically, plaintiff alleges that in the days leading up to Bradley's hospitalization and eventual death, she was denied effective medical treatment despite obvious risks to her health and safety, and that the medication she was administered exacerbated her underlying conditions.  Plaintiff alleges two causes of action: one violation of Bradley's Fourteenth Amendment rights against all defendants (count one), and one claim of negligence against Turn Key (count two).  Both Sheriff Regalado and Turn Key assert that

plaintiff's allegations fail to establish a violation of Bradley's constitutional rights, and, even if the Court finds that Bradley's Fourteenth Amendment rights were violated, plaintiff fails to establish that such a violation was the result of either a Turn Key or a Tulsa County Sheriff's Office (TCSO) official custom or policy. Dkt. # 31, at 17-34; Dkt. # 32, at 16-33. Turn Key also asserts that under the Oklahoma Governmental Tort Claims Act (OGTCA), plaintiff is barred from bringing a claim for negligence against it. Id. at 34-37. Wagga, an advanced practice registered nurse (APRN) employed by Turn Key who allegedly prescribed Bradley medication prior to her death, argues that plaintiff's allegations fail to establish a violation of Bradley's constitutional rights on the ground that the allegations do not demonstrate deliberate indifference. Dkt. # 29, at 6-10.

## I.

Plaintiff alleges that Bradley was transported to Tulsa County Jail on February 19, 2022, where she was held as a pretrial detainee. Dkt. # 2, ¶ 12. Throughout her life, Bradley suffered from numerous acute mental health conditions, including bipolar disorder, paranoid schizophrenia, anxiety, and dissociative identity disorder, for which she had received treatment and which plaintiff claims were obvious to a layperson. Id. ¶ 13. Shortly after Bradley's intake, Turn Key nurses and counselors prescribed and administered the same antidepressant/antianxiety and antipsychotic medications she had previously been prescribed. Id. ¶¶ 15-19. About a month after Bradley's intake, Turn Key nurses and counselors noted that Bradley was displaying unusual behavior—including disorientation, delusions, and hallucinations—and placed her in a mental health observation cell. Id. ¶¶ 20-23. Bradley's previously prescribed medications were discontinued, and she was prescribed a new medication to treat her bipolar disorder and schizophrenia; however, she continued to hallucinate and experience delusions. Id. ¶¶ 24-25. Despite the change in medication and an

evaluation by a licensed psychologist, her condition declined. Id. ¶¶ 25-27. She was also prescribed a new antidepressant/antianxiety medication. Id. ¶¶ 28-29. In August, 2022, at a competency hearing, Bradley was determined not competent to proceed with the criminal charges pending, and her case was set for review in November 2022. Id. ¶ 29. Bradley's health showed no improvement in the subsequent months, and, in October 2022, she was placed on suicide watch for "stating that she wanted to cut her left leg off." Id. ¶ 30. While observing Bradley on suicide watch, Wagga found Bradley trembling, and Bradley was prescribed and administered medication used to treat Parkinson's Disease. Id. Eleven days later, Bradley stated she was vomiting, felt faint, and experienced blurry vision, and she "became noncompliant with her medications." Id. ¶¶ 32-33. Bradley exhibited unusual behavior, moving her mattress onto the floor of her cell and lying naked on the floor of her cell, unresponsive. Id. ¶ 33.

On December 21, 2022, Bradley is alleged to have felt faint and to have slipped and fallen in the shower, causing a golf ball–sized bump on her forehead. Id. ¶ 34. She was observed experiencing worsened symptoms of psychosis, including dizziness and blurred vision, and she refused to eat. Id. ¶¶ 35-36. Over the next two days, Bradley refused her medications and meals, while showing symptoms of psychosis, as well as difficulty walking and standing. Id. ¶¶ 37-39. On December 23, 2022, while she was in her cell, Bradley is alleged to have fallen and hit her head a second time. Id. ¶ 40. She was discovered on the floor of her cell, unresponsive, with no pupil response, bleeding from her left eye. Id. ¶ 41. Two hours after she was discovered unresponsive in her cell, Bradley was transported to the emergency department of Ascension St. John Medical Center (St. John's) by Emergency Medical Services Authority (EMSA), where lab test results showed that she suffered from lactic acidosis, a buildup of lactic acid in the blood stream related to kidney or

liver failure, and hypokalemia, or low potassium levels that can cause fatigue and weakness and can be indicative of other underlying conditions. Id. ¶¶ 42-46. At St. John's, she was administered intravenous fluids to normalize her lactic acid and potassium levels. Id. ¶ 47. She was admitted overnight for treatment and was discharged the next morning when her levels were back within normal limits, and she was given specific instructions to return for immediate care if symptoms worsened or new symptoms appeared. Id. ¶¶ 48-49.

When Bradley returned to Tulsa County Jail on December 24, 2022, she showed improvements in her overall condition, but her mental health symptoms persisted, and she was again observed lying naked on the floor of her cell. Id. ¶ 50. Wagga, who was offsite, "made a telephonic order to give Ms. Bradley injections of Haldol (a powerful antipsychotic) 10mg and Benadryl 100mg." Id. ¶ 51. Plaintiff alleges that Haldol is especially dangerous for use in patients at risk of developing heart problems, including patients with hypokalemia. Id. Plaintiff alleges that immediately following the administration of Haldol, per Wagga's order, Bradley's condition deteriorated, and several Turn Key providers observed her become unresponsive, lying naked on the floor of her cell. Id. ¶¶ 52-54. The next evening, on December 25, 2022, Bradley was again observed unresponsive, lying naked on the floor of her cell. Id. ¶¶ 55-61. A nurse entered the cell and attempted to elicit a response by physical stimulus, but was unable to rouse Bradley, whose

breathing was shallow.  Id. ¶ 61.  EMSA was called and transported Bradley, who was unresponsive and required intubation, to St. John's.  Id. ¶ 62.  After she was admitted to St. John's, Bradley went into cardiac arrest and died.[1]  Id. ¶ 63.

Plaintiff, who was appointed as administratrix of Bradley's estate in January 2023, brought suit against defendants Turn Key and Sheriff Regalado, in his official capacity, as well as nurses Nikki Copeland, Judy Wagga, and Irene Muriuki.  Dkt. # 2.  Defendants Turn Key, Sheriff Regalado, Copeland, and Wagga moved to dismiss for failure to state a claim.  Dkt. # 31; Dkt. # 32; Dkt. # 30; Dkt. # 29.  Plaintiff responded, Dkt. # 42, Dkt. # 43, Dkt. # 44, Dkt. # 45, and defendants replied, Dkt. # 51, Dkt. # 52, Dkt. # 53, Dkt. # 54.  Plaintiff and defendant Copeland filed a stipulation of dismissal and Copeland was terminated as a party defendant.  Dkt. # 56; Dkt. # 57.  In the interim,

---

[1]     Defendants Turn Key, Regalado, and Wagga each note that plaintiff did not plead the date of death in her complaint.  Dkt. # 31, at 5; Dkt. # 32, at 5; Dkt. # 29, at 4.  All three defendants ask the Court take judicial notice of a filing in Tulsa County District Court, In re Estate of China Bradley, No. 23-301, (Okla. Tulsa Cnty. Jan. 10, 2023), and attach a copy of the petition for appointment of plaintiff as special administratrix of Bradley's estate.  Dkt. # 31-1; Dkt. # 32-1; Dkt. # 29-1.  The filing, which is a petition for appointment of plaintiff as special administratrix of Bradley's estate, states that "[t]he [d]ecedent died intestate on or about January 2, 2022 . . . ."  Dkt. # 31-1, at 1; Dkt. # 32-1, at 1; Dkt. # 29-1, at 1.  However, all three defendants state that "she died on January 2, 2023."  Dkt. # 31, at 5; Dkt. # 32, at 5; Dkt. # 33, at 4.  Plaintiff's allegations include that plaintiff was alive as of December 25, 2022, and therefore the petition for appointment contains what is likely a typographical error that should read January 2, 2023.  A court may, in its review of a motion under Rule 12(b)(6), take judicial notice of facts not pled without converting the motion to one for summary judgment, Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010), and such notice is appropriate when those facts are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned" and are therefore "not subject to reasonable dispute," FED. R. EVID. 201(b); Fuqua v. Santa Fe Cnty. Sheriff's Off., 157 F.4th 1288, 1298 (10th Cir. 2025).  Despite the date discrepancy, the Court can conclude that the source's "accuracy cannot be reasonably questioned" and that it is "not subject to dispute."  The Court therefore takes judicial notice of the date of Bradley's death as January 2, 2023.

plaintiff and  defendant Turn Key filed notices of supplemental authority.  Dkt. # 34; Dkt. # 55.

## II.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief can be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level."  Id. at 555, 570 (citations omitted).  "[O]nce a claim has been statedadequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 563. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions."  Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (quoting FED. R. CIV. P. 1) (internal quotations omitted).  For the purpose of making the dismissal determination, a court must accept all the complaint's well-pleaded allegations as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant.  Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim [up]on which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

### III.

Plaintiff alleges two claims, one for relief under 42 U.S.C. § 1983 against all defendants for violating Bradley's rights under the Fourteenth Amendment, in that they were deliberately indifferent in failing to treat Bradley's serious and obvious mental and physical health issues, which caused her death.  Dkt. # 2, ¶¶ 269-73. Plaintiff also brings one claim of negligence under Oklahoma law against Turn Key under the theory that it owed a duty to Bradley a duty to tender medical treatment with reasonable care and that, in failing to do so, it caused her death.  Id. ¶¶ 294-300.

#### A.  Section 1983 Claim (Count One)

Plaintiff's first claim for relief arises under 42 U.S.C. § 1983, which creates a cause of action against state officials for "deprivation of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983; see also Becker v. Kroll, 494 F.3d 904, 913 (10th Cir. 2007).  To state a claim under § 1983, a plaintiff must make two showings: first, she must allege "the violation of a right secured by the Constitution and laws of the United States," and second, she must "show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  Plaintiff alleges that Turn Key, its employees (including Wagga), and Sheriff Regalado violated Bradley's Fourteenth Amendment right to be free from cruel and

unusual punishment as a pretrial detainee. U.S. Const. amend. XIV;[2] Dkt. # 2, ¶¶ 1, 269-93; Dkt. # 43, at 10; Dkt. # 44, at 18; Dkt. # 45, at 18. . The Eighth Amendment, as applied to pretrial detainees via the Fourteenth Amendment, "imposes a duty on prison officials to provide humane conditions of confinement including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008). To establish a Fourteenth Amendment violation, a plaintiff must demonstrate that a prison official acted with "deliberate indifference" by knowing and disregarding an excessive risk to an inmate's health or safety. Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000); Farmer v. Brennan, 511 U.S. 825, 837 (1994). Courts in the Tenth Circuit examining allegations of violations of a pre-trial detainee's Fourteenth Amendment right to medical treatment apply a two-party test to determine whether a plaintiff has alleged deliberate indifference to an inmate's serious medical needs. Quintana v. Santa Fe Cnty. Bd. of Comm'rs, 973 F.3d 1022, 1028 (10th Cir. 2022). A plaintiff alleging deliberate indifference to a substantial risk of harm must allege both an objective

---

[2]    Plaintiff states that, at the time of her death, Bradley was a pretrial detainee, and thus the claim is properly brought under the Fourteenth Amendment, as contrasted with an Eighth Amendment claim on the same grounds for a detainee who is held post-adjudication. Dkt. # 43, at 10; Dkt. # 44, at 18; Dkt. # 45, at 18. Plaintiff alleges that Bradley was determined not competent to proceed and adjudicate the criminal charges against her prior to her death and was being held awaiting a restoration review. Dkt. # 2, ¶ 29. As plaintiff pleads her claims under the Fourteenth Amendment, and Bradley's case had not yet been adjudicated at the time of her death, the Court analyzes plaintiff's claim under the Fourteenth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). Moreover, as plaintiff points out, courts analyzing claims brought under the Eighth and Fourteenth Amendments apply the same analysis to determine whether deliberate indifference has been sufficiently pled. Dkt. # 43, at 10; Dkt. # 44, at 18; Dkt. # 45, at 18; see also Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009); Quintana v. Santa Fe Cnty. Bd. of Comm'rs, 973 F.3d 1022, 1028-29 (10th Cir. 2020).

component, that the deprivation was "sufficiently serious," and a subjective component, that the prison official "knows of and disregards an excessive risk to inmate health or safety." Sealock, 218 F.3d at 1209 (quoting Farmer, 511 U.S. at 834). Defendants Turn Key, Sheriff Regalado, and Wagga argue that plaintiff fails to adequately allege the subjective component of a § 1983 deliberate indifference claim. Dkt. # 29, at 8-10; Dkt. # 31, at 17-23; Dkt. # 32, at 16-18. All three defendants agree that the objective component of a deliberate indifference claim is satisfied on the basis that death is "sufficiently serious to meet the objective component," see Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009), and no defendant disputes that Bradley died while in custody (for the purposes of these motions). Dkt. # 29, at 7; Dkt. # 31, at 16; Dkt. # 32, at 15-16. Because defendants have waived any argument as to the objective component of the deliberate indifference analysis, the Court considers it met and limits its determination to the subjective analysis. See Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006).

Two types of conduct can give rise to a claim for deliberate indifference in the context of a medical professional allegedly mistreating or failing to treat an inmate's medical needs. A claim may arise if a medical professional "fail[s] to treat a serious medical condition properly" or "prevent[s] an inmate from receiving treatment or den[ies] him access to medical personnel capable of evaluating the need for treatment." Sealock, 218 F.3d at 1211; see also Crowson v. Washington Cnty. Utah, 983 F.3d 1166, 1179 (10th Cir. 2020). For either approach, the minimum pleading requirement may be met "by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition," even if only from a brief delay. Mata v. Saiz, 427 F.3d 745, 755 (10th Cir. 2005) (collecting cases). "It is not enough to establish that the official should have known of the risk of harm." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th

Cir. 1998) (citing Farmer, 511 U.S. at 837).  The official must be shown to have been aware of but have failed to take reasonable steps to alleviate the risk of serious harm to the inmate.  Tafoya, 516 F.3d at 916.  This subjective determination tasks a court with considering the symptoms displayed by the prisoner and asking "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" Martinez, 563 F.3d at 1089 (quoting Mata, 427 F.3d at 753).  Under Tenth Circuit precedent, a "factfinder may conclude that a prison official knew of a substantial risk form the very fact that the risk was obvious," in that the symptoms were "'obvious' to the so-called 'reasonable man.'" Quintana, 973 F.3d at 1029 (first quoting Farmer, 511 U.S. at 837, then quoting Mata, 427 F.3d at 752) (enumerating unconsciousness and a gangrenous hand laceration as examples of "obvious" risks).

### 1.  Judy Wagga, APRN

Plaintiff alleges that "Wagga, who was not onsite at the [j]ail, made a telephonic order to give Ms. Bradley injections of Haldol (a powerful antipsychotic) 10 mg and Benadryl 100mg," which plaintiff characterizes as "inappropriate and unnecessary," and which "served to sedate Ms. Bradley and slow her respiration."  Dkt. # 2, ¶ 51.  Plaintiff characterizes the Haldol as "particularly hazardous, as it is not indicated for use in patients at special risk for the development of certain heart problems, including patients with hypokalemia."  Id.  Plaintiff further alleges that following the administration of the Haldol, "Bradley's medical condition immediately began to deteriorate throughout the day . . . due to her underlying hypokalemia and lactic acidosis, and exacerbated by the Haldol," causing Bradley to "resume lying naked on the floor of her cell," unable to "stand or walk," and leaving her "barely responsive."  Id. ¶ 52.  Plaintiff argues that she has sufficiently alleged that Wagga was aware of Bradley's dire condition and failed to both properly treat Bradley

10

and prevented Bradley from accessing treatment that could have saved her life.  Dkt. # 43, at 12-13.

As to the first method of showing deliberate indifference, plaintiff pursues a theory that deliberate

indifference may arise from "a medical professional's failure to treat an inmate's condition

*properly*," such that the official administered some medical treatment, albeit inappropriate or

improper treatment.  Id. at 13 (emphasis in original) (citing Lucas, 58 F.4th at 1138).

As Wagga counters, courts have held that a plaintiff fails to allege a constitutional violation

by alleging mere "[d]isagreement with a medical professional's 'judgment concerning the most

appropriate treatment, without more.'" Dkt. # 53, at 8 (quoting Jones v. Bokor, 443 F. App'x 327,

330 (10th Cir. 2011) (unpublished) (quoting Gee v. Pacheco, 627 F.3d 1178, 1192 (10th Cir. 2010)))

(citing Arriaga v. Roberts, 803 F. App'x 222, 223 (10th Cir. 2020) (unpublished)).  Wagga

underscores that a finding of deliberate indifference requires a higher degree of fault than negligence,

or even gross negligence, and that "ordering incorrect or improper medication cannot constitute

deliberate indifference."  Dkt. # 53, at 8 (citing Dkt. # 29, at 8).  Moreover, she argues that although

plaintiff states that the medications were "hazardous," plaintiff fails to connect "Wagga's subjective

awareness of any particular risk to Bradley" with her administration of the Haldol.  Dkt. # 29, at 9.

Therefore, Wagga was not in a position where she "should have known that Haldol and Benadryl

would present a serious risk of harm to Bradley."  Id.  And even if Wagga was mistaken in

prescribing Haldol, the Tenth Circuit has previously held that even prescribing incorrect medication

negligently did not, unto itself, rise to the level of a finding of deliberate indifference.  Id. at 9-10

(citing Peterson v. Creany, 680 F. App'x 692, 697 (10th Cir. 2017) (unpublished); Blake v. Corizon

Health, No. 21-CV-3140-SAC, 2021 WL 3472642, at *3 (D. Kan. Aug. 6, 2021)).

At this stage, plaintiff has failed to sufficiently alleged that the fact that Wagga prescribed Haldol rises to the level of gross negligence, recklessness, or deliberate indifference necessary for a colorable claim under the Fourteenth Amendment.  Taking plaintiff's allegations as true—that Wagga prescribed the Haldol and Benadryl, which was an incorrect and improper medication given plaintiff's underlying conditions—her allegations fail to rise to a level of risk that would be "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).  Plaintiff does not allege that Wagga knowingly placed Bradley on inappropriate and harmful medication(s).  See Brown v. Prison Health Servs., 159 F. App'x 840, 841 (10th Cir. 2005) (unpublished);[3] Barney, 143 F.3d at 1310.  Nor does the fact that Wagga prescribed Bradley Haldol, unto itself, show that Wagga had a sufficiently culpable state of mind, as plaintiff asserts that it is a powerful antipsychotic medication prescribed after plaintiff displayed symptoms of inadequately controlled mental health conditions.  Dkt. # 2, ¶¶ 50-51; Barney, 143 F.3d at 1310.  Plaintiff's allegations leave open the possibility that the inappropriate prescription was an "accidental or inadvertent failure to provide adequate medical care" that "do[es] not constitute a medical wrong" under the Fourteenth Amendment.  Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) (discussing the same standard under the Eighth Amendment).

Plaintiff urges the Court to consider Oxendine v. Kaplan, 251 F.3d 1272 (10th Cir. 2001).  In that case, a doctor reattached part of an inmate's severed finger and was found to have failed to treated a serious medical condition properly, in that he treated an evidently gangrenous and infected

---

[3]     Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

wound with Tylenol. Id. at 1277, 1278. There, the doctor was alleged to have provided some care, albeit not proper care, to have known of the inmate's need for further care, and to have left the inmate, who was in obvious need of additional medical care, without further treatment or an outside referral. Id.; see also Self v. Crum, 439 F.3d 1227, 1231 (10th Cir. 2006) (discussing the findings of Oxendine); Lucas, 58 F.4th at 1138 (same). Using the Tenth Circuit's findings in Oxendine, and its subsequent reliance on those findings in Lucas, plaintiff argues that even if the fact that Wagga's prescription of Haldol did not amount to deliberate indifference, Wagga's failure to send Bradley back to the hospital for further evaluation, per the discharge instructions for Bradley's previous visit, does. Dkt. # 43, at 13-14. As discussed above, plaintiff has not alleged that Wagga knowingly prescribed an inappropriate medication. Moreover, Tenth Circuit precedent does not permit a court to conclude that a medical provider prescribing incorrect medication, even knowingly, is inherently deliberate indifferent. See, e.g., Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993) (holding that an incorrect prescription of a leg stocking for leg cramps was not deliberately indifferent); Peterson v. Creany, 680 F. App'x at 997 (holding that prescription of a generic equivalent to a prescription medication that had been discontinued was not deliberately indifferent); Brown, 159 F. App'x at 841 (finding that placing an inmate on an improper diabetes medication, despite his file noting that he should not be prescribed the medication, was not deliberately indifferent). As the Tenth Circuit has expressed, "[a] claim that a course of treatment was inadequate after the exercise of medical judgment, absent an extraordinary degree of neglect, . . . does not rise to disregard of serious medical need." Lucas, 58 F.4th at 1137 (citing Crum, 439 F.3d at 1232, 1234). Wagga's medical judgment, in prescribing Haldol, does not, absent a showing of Wagga's extraordinary neglect, meet the subjective requirement of a deliberate indifference analysis.

Plaintiff also argues that Wagga acted as a "gatekeeper," preventing Bradley from receiving treatment or access to capable treatment. However, plaintiff has not alleged that Wagga was present or aware of Bradley's symptoms or reaction to the administration of the Haldol, such that her failure to seek external treatment can be considered deliberately indifferent. As plaintiff alleges, Wagga was not present at the Tulsa County Jail when she prescribed the Haldol and therefore may not have been aware that Bradley had "resumed lying naked on the floor fo her cell, could not stand or walk, and was barely responsive" following the administration of the medication.[4]  Dkt. # 2, ¶¶ 51-53.  By contrast, in Oxendine, the Tenth Circuit found that a plaintiff had sufficiently stated a claim by alleging that a treating physician was deliberately indifferent, in part, because that physician was aware of the substantial risk of harm that the inmate faced by delaying treatment of the "blackened and decaying tissue" resulting from the finger reattachment, and, despite the fact that he knew as much, the doctor failed to seek access to treatment for the inmate.  241 F.3d at 1277, 1279.  Even if Bradley was evidently in need of urgent access to medical personnel capable of treating her condition, plaintiff has not alleged that Wagga knew as much, especially in light of the fact that Wagga is alleged to have been offsite.  Because plaintiff has not alleged that Wagga knew of Bradley's condition following the administration of the medication, the Court is unable to conclude

---

[4]    Plaintiff does allege, however, that other Turn Key providers were present and aware of plaintiff's state "lying naked on the floor of her cell, unable to stand or walk, and unresponsive to verbal stimuli." Dkt. # 2, ¶ 53. The Court's findings as to Wagga's deliberate indifference are without prejudice to Turn Key's responsibility regarding its other employees' deliberate indifference to a substantial risk of harm to Bradley's health and safety. See infra. The Tenth Circuit has made clear that even if "the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." Garcia v. Salt Lake Cnty., 768 F.2d 303, 310 (10th Cir. 1985); see also Quintana, 973 F.3d at 1033-34.

14

that she was deliberately indifferent to Bradley's serious medical need. Plaintiff does not state a claim on which relief can be granted against Wagga, as she does not meet her burden of alleging that a constitutional violation took place. Therefore, plaintiff's § 1983 claim against Wagga must be dismissed.

### 2. Turn Key Health Clinics, LLC

According to plaintiff's allegations, which the Court accepts as true, following Bradley's discharge from St. John on December 24, 2022, her condition had improved and she left with instructions to return to the ER immediately for further care if her symptoms worsened or changed. Dkt. # 2, ¶¶ 49-50. Although her physical condition had improved, her mental condition remained unstable, and, from a telephonic order, Wagga prescribed Haldol and Benadryl, which were administered. Id. ¶ 51. Thereafter, Bradley's condition immediately deteriorated, and plaintiff alleges that Turn Key employees observed Bradley "lying naked on the floor of her cell, unable to stand or walk, unresponsive to verbal stimuli," even when physically shaken. Id. ¶¶ 52-61. Plaintiff alleges that between 3:00 a.m. and 7:30 p.m. on December 25, 2022, Turn Key employees were aware of Bradley's unresponsive state and her "obviously emergent medical and mental health conditions" but failed to both properly treat her condition and seek access to medical personnel capable of evaluating Bradley's need for treatment. Id. ¶¶ 52-62.

The Court finds that plaintiff has adequately alleged a claim of deliberate indifference against Turn Key. Plaintiff alleges that Turn Key employees failed to address Bradley's obviously emergent condition for sixteen and a half hours, during which time Turn Key employees were aware of Bradley's visibly worsening condition. Id. ¶¶ 51-62. Starting at 3:00 a.m., a nurse noted that Bradley was in her cell, barely responsive. Id., ¶ 54. By 5:00 p.m., a nurse relayed to her supervisor that

Bradley's condition was not normal and sought further assistance. Id. ¶ 57. That nurse attempted to contact the mental health staff of the jail, but received no answer. Id. ¶ 59. The same nurse also chose not to administer medication because she was aware of a risk of aspiration if Bradley were given pills to swallow. Id. ¶ 60. It was not until a nurse finally entered Bradley's cell and discovered that Bradley's respirations were shallow and she was not responding to physical stimuli, that a Turn Key employee sought access to medical personnel capable of evaluating Bradley's need for treatment. Id. ¶ 61. Plaintiff alleges actions and omissions by several Turn Key employees, which, taken together, give rise to a constitutional violation. Under Crowson v. Washington County Utah, 983 F.3d 1166 (10th Cir. 2020), a claim against a municipality may be based on a "systemic failure" that comprises of the acts or omissions of several employees functioning under a policy or custom, rather than based on the acts of an individual defendant. Id. at 1186; see also Johnson v. Davis Cnty., No. 21-4030, 2022 WL 830202, at *3 (10th Cir. March 21, 2022). Plaintiff's allegations as to Bradley's condition during those sixteen and a half hours lead the Court to conclude that her need for medical attention was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Sealock, 218 F.3d at 1209 (quoting Hunt, 1995 F.3d at 1224)). As the facts are alleged, the Turn Key employees' failure to seek necessary treatment fulfills the subjective prong of the deliberate indifference inquiry.

Turn Key employees did administer some treatment to Bradley in the time between her visits to the St. John's emergency department—namely that Wagga prescribed, and other Turn Key employees administered, Haldol and Benedryl. Dkt. # 2, ¶ 51. However, there need not have been a complete denial of care for plaintiff to state a claim for deliberate indifference under Tenth Circuit law. See Lucas, 58 F.4th at 1138-39 (discussing Oxendine, 241 F.3d 1272, Sealock, 218 F.3d 1205,

and Gray v. Geo Grp., 727 F. App'x 940 (10th Cir. 2018) (unpublished), Est. of Jensen by Jensen v. Clyde, 989 F.3d 848 (10th Cir. 2021), in which the Tenth Circuit has found deliberate indifference despite an inmate receiving treatment for an obvious medical issue) ("[M]erely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability" (emphasis in original)). In this case, even though Turn Key staff did administer Haldol and Benedryl, they found plaintiff in an unresponsive state and left her in her cell in a deteriorated state for hours; the Turn Key employees' actions after they are alleged to have been aware of plaintiff's condition would be "the functional equivalent of a complete denial of care in light of the specific circumstances." Id. Thus, plaintiff's allegations sufficiently establish the subjective component of a deliberate indifference claim against Turn Key.

### 3. Municipal Liability Against Turn Key Health Clinics, LLC and Sheriff Vic Regalado

Under Monell v. Department of Social Services, 436 U.S. 658 (1978) local governing bodies are subject to liability for constitutional violations that flow from the body's policies. Id. at 690. Liability may be extended, also under Monell, to "private entities acting under color of state law," including medical contractors like Turn Key. Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003); see also Lucas, 58 F.4th at 1144; Carr v. El Paso Cnty., Colo., 757 F. App'x 641, 644 (10th Cir. 2018) (unpublished). A municipal entity "may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997)). Municipal liability is limited to situations in which an "official policy is the '"moving force" behind the injury alleged.'" Barney, 143 F.3d at 1307 (quoting Brown, 520 U.S. at 404). To establish liability for a § 1983 claim against a municipal entity, a plaintiff "must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference." Crowson, 983 F.3d at 1184

(quoting Quintana, 973 F.3d at 1034).  A plaintiff may also sufficiently allege municipal liability where a custom or policy is carried out with insufficient staff.  Garcia v. Salt Lake Cnty., 768 F.2d 303, 306-08 (10th Cir. 1985); Crowson, 983 F.3d at 1184-92.

### a. Turn Key Health Clinics, LLC

Plaintiff asserts that a series of "systemic failure of medical policies and procedures" promulgated by Turn Key caused Bradley's death.  Plaintiff alleges that Bradley was never seen by a physician during her time at Tulsa County Jail; plaintiff asserts that the lack of physician supervision for urgent and emergent conditions is endemic to the Tulsa County Jail, which is further exacerbated by staffing allocation decisions made by Turn Key's medical director and excessive reliance on nurse practitioners and physicians' assistants.  Dkt. # 44, at 26-27 (quoting Dkt. # 2, ¶¶ 105, 246-49).  Plaintiff further alleges that the Turn Key system was broadly designed to "minimize costs at the expense of inmate care," placing inmates with health conditions at risk.  Id. at 27 (quoting Dkt. # 2, ¶ 253).  Plaintiff enumerates the incentives Turn Key has to minimize costs at the expense of care, including bearing the cost of inmate hospitalization and pharmaceuticals (up to a limit).  Id. at 24-25 (quoting Dkt. # 2, ¶¶ 91-98).  Plaintiff then alleges that Turn Key lacked clear policies or protocol for, and in turn failed to train its staff about, treating complex or serious medical conditions.  Id. at 26 (quoting Dkt. # 2, ¶¶ 99-105).

Turn Key asserts that these claims are "generalized deficiencies relating to all aspects of medical care" that are "too conclusory to state a plausible § 1983 municipal liability claim."  Dkt. # 31, at 24.  Turn Key cites to Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127 (10th Cir. 2023) in which a complaint alleging that the Tulsa County Jail and Turn Key maintained a policy without mandatory minimum expenditures and apportionment of costs for pharmaceuticals and

offsite care that created improper incentives, was insufficiently specific to conclude that a policy or custom existed. Id. at 1145-46. The Tenth Circuit concluded that a policy to "keep costs low . . . is no more troublesome than any institution's general desire to maintain low costs to the extent reasonably possible." Id. at 1145. Here, plaintiff's allegations rest on more than the bald claim that Turn Key's policies were driven by cost-cutting measures. Plaintiff's allegations as to the lack of staffing and grossly deficient staffing allocation, especially with respect to the availability of treating physicians, both result from Turn Key's unreasonable method of cutting costs and bear directly on the facts at issue here, given that Bradley was left without proper medical attention by a physician capable of assessing her need for treatment. Plaintiff's allegations regarding Turn Key's lack of policies and protocol for treating serious medical conditions again are alleged to result from cost-cutting measures and bear on the alleged indifference Turn Key employees expressed in response to Bradley's deteriorating condition. Plaintiff's allegations adequately show that Turn Key employees ignored Bradley's obvious need for urgent medical attention due to the official policy of prioritizing financial gain over providing necessary care. These alleged policies and their effect on Bradley's care and treatment by Turn Key are more than "boilerplate allegations," which would be impermissibly vague per the pleading standards imposed by Iqbal and Twombly; rather, plaintiff sets out specific facts that support the inference of the existence of a policy or custom without the benefit of specificity that would be conferred by discovery. See Gooding v. Ketcher, 939 F. Supp. 2d 1231, 1241 (N.D. Okla. 2012) (citing Taylor v. RED Dev., LLC, No. 11-CV-2178, 2011 WL 3880881, at *3-4 (D. Kan. Aug. 31, 2011); Thomas v. City of Galveston, Tex., 800 F. Supp. 2d 828, 842-43 (S.D. Tex. 2011)). At this stage, plaintiff's allegations sufficiently support the inference that Turn Key

19

operated under an official policy or custom that caused its employees to deny Bradley access to medical care. Turn Key's motion to dismiss should therefore be denied.

### b. Sheriff Vic Regalado

Like the claim against Turn Key, for the claim against Sheriff Regalado, in his official capacity, plaintiff must allege facts to show that a policy or custom by Sheriff Regalado or TCSO caused Bradley's constitutional deprivation. Burke v. Regalado, 935 F.3d 960, 998-99 (10th Cir. 2019). Plaintiff argues that in retaining Turn Key as the medical contractor for Tulsa County Jail, TCSO inherently adopts Turn Key's official policies as its policies. Dkt. # 46, at 24-25. Both under Oklahoma law and within the Tenth Circuit, a sheriff has been considered the final policymaker for a county jail. Est. of Crowell ex rel Boen v. Bd. of Cnty. Comm'rs of Cnty. of Cleveland, 237 P.3d 134, 142 (Okla. 2010); Brown, 520 U.S. at 401-02; see also Wirtz v. Regalado, No. 18-CV-599-GKF-FHM, 2020 WL 1016445, at *13 (N.D. Okla. Mar. 2, 2020). To state a claim against Sheriff Regalado in his official capacity, plaintiff must allege facts to plausibly suggest that the constitutional violation, carried out by Turn Key employees, represented an official policy or custom of Tulsa County or the TCSO, establishing "a causal link between the municipal action and the deprivation of federal rights." Brown, 520 U.S. at 404; see also Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs, 962 F.3d 1204, 1241 (10th Cir. 2020). Plaintiff alleges that Sheriff Regalado has, by contracting with Turn Key to provide medical services to the Tulsa County Jail, established a policy of providing the least expensive medical care at the cost of inmate safety. Dkt. # 46, at 25-27 (quoting Dkt. # 2, ¶¶ 87-105, 246-257). In practice, the structure of the County's contractual agreement with Turn Key has, by plaintiff's account, led Turn Key to implement cost-cutting policies

that placed Bradley at risk, including (as discussed above) inadequate staffing, substandard training, and insufficient protocol for responding to immediately life-threatening medical conditions.  Id.

As discussed in reference to Turn Key, a general policy of keeping costs at a minimum cannot, unto itself raise the inference that a TCSO custom or policy caused Bradley's injury.  Lucas, 58 F.5th at 1156.  However, plaintiff does allege, unlike in Lucas, that the Turn Key medical staff treating Bradley "were motivated by costs in their actions," in that they had incentives not to refer Bradley to an external provider, they were not trained to respond to conditions as severe as Bradley's, and they were inadequately staffed to assess Bradley's condition and ascertain that she needed urgent help.  Id.; Dkt. # 46, at 25-29 (quoting Dkt. # 2, ¶¶ 87-105; 247-57).  Plaintiff alleges that the motivation to prioritize costs over safety flowed directly from TCSO policies and the contractual agreement in place between TCSO and Turn Key.  Whether plaintiff's allegations as to TCSO's official policies or customs survive a more stringent review is yet to be seen; however, the Court finds them sufficient to avoid dismissal as to the deliberate indifference claims against Sheriff Regalado, in his official capacity.  Sheriff Regalado's motion to dismiss should therefore be denied.

## B.  Negligence Claim (Count Two)

Plaintiff next also alleges one count of negligence against Turn Key under the doctrine of respondeat superior.  Dkt. # 2, ¶¶ 294-300.  Turn Key gave notice that, while the three motions in this case were pending, the Oklahoma Supreme Court issued a decision in Sanders v. Turn Key Health Clinics, LLC, 566 P.3d 591 (Okla. 2025).  Dkt. # 34.  In Sanders, the Oklahoma Supreme Court concluded that the plaintiff was precluded from bringing negligence claims for acts committed in Oklahoma county jails against Turn Key, as a private company that contractually supplies medical care to individuals in state custody, under the OGTCA.  566 P.3d at 608.  Plaintiff also filed a notice

of supplemental authority, in which a court denied Sheriff Regalado and Turn Key's motions to dismiss in a case in which an individual died in defendants' custody following an alleged denial of medical and mental health care.  Dkt. # 55 (citing Crawford v. Turn Key Health Clinics LLC, No. 24-CV-6-JDR-SH, 2025 WL 1885637 (N.D. Okla. July 8, 2025)).    Therein, plaintiff "acknowledge[d] that *Saunders v. Turn Key Health Clinics* precludes negligence claims against private companies like Turn Key for allegedly negligent acts committed in county jails."  Id. at 2 (citation omitted).  Likewise, in the case to which plaintiff draws the Court's attention, Crawford v. Turn Key Health Clinics, LLC, the court dismissed plaintiff's negligence claim against Turn Key because "Turn Key, an independent contractor employing licensed medical processionals for the jail, is an employee of the state and thus entitled to qualified immunity under the [O]GTCA." 2025 WL 1885637, at *7.  Given the Oklahoma Supreme Court's ruling and plaintiff's acknowledgment of its holding, Turn Key is precluded from liability as to plaintiff's negligence claim under the OGTCA. The Court grants defendant Turn Key's motion to dismiss as to plaintiff's negligence claim (count two).

**IT IS THEREFORE ORDERED** that defendant Judy Wagga, APRN's motion to dismiss (Dkt. # 29) is **granted**.  **Defendant Judy Wagga, APRN is terminated as a party defendant**.

**IT IS FURTHER ORDERED** that defendant Turn Key's motion to dismiss (Dkt. # 31) is **granted in part** as to plaintiff's claim of negligence (count two), and it is **denied in part** on all other grounds.

**IT IS FURTHER ORDERED** that defendant Sheriff Vic Regalado's motion to dismiss (Dkt. # 32) is **denied**.

**DATED** this day the 20th of March, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

22